# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer, *et al.,*

    Plaintiffs,

v.                                                                                     69cv07896 JEC (ACE)
                                                                           RIO PUEBLO DE TAOS ADJUDICATION

EDUARDO ABEYTA, *et al.,*
    Defendants.

and

STATE OF NEW MEXICO, *ex rel.*
State Engineer, *et al.,*
    Plaintiffs,

v.                                                                           69cv07939 JEC (ACE)
                                                                                        RIO HONDO ADJUDICATION

CELSO ARELLANO, *et al.,*
    Defendants.                                                                                  (CONSOLIDATED)

## **Memorandum Opinion and Order**

THIS MATTER is a part of the general stream adjudication of water rights of the Rio Pueblo de Taos and the Rio Hondo. It is before me on the State of New Mexico's August 5, 1993 Motion for Action (Docket No. 2149) on the Special Master's July 23, 1993 Report concerning non-Indian priorities and customs (No. 2143) and on the Pueblo of Taos' August 3, 1993 Objections (No. 2147) to the Report. Having made a *de novo* review of the Report, the objections, other relevant portions of the record, and the law, I resolve the Pueblo's objections as follows. However, I make no rulings at this time on the Special Master's recommendations regarding specific priorities as between the State and the individual claimants.

**Background:** The non-Pueblo water rights adjudication process can be divided into roughly three phases. First, in the fact-gathering phase, the State conducts the hydrographic survey and historic research and complies its results. Second, in the subfile phase, it makes offers of judgment to the state water rights claimants. Each claimant then either accepts the offer or presents a challenge with evidence designed to improve the right. Thereafter, the Court enters an order, setting the right as between the State and the claimant. Third, in the *inter sese* phase, all other parties may challenge and offer evidence against part or all of the claimant's right as described in the subfile stage. Finally, the Court enters a final decree. The Special Master's 1993 Report addressed herein is directed to resolving the second or subfile phase issues.

**Objections:** The Pueblo makes four objections to the Report. I shall address the **first objection** last. In its **second objection,** the Pueblo states that "...[t]he priority date determined by the July 1993 Report for any ditch serving lands owned by the Taos Pueblo should not be the priority date for such Pueblo lands". Pueblo's August 3,1993 Objections at 1-2. I agree. The Special Master specifically limited the scope of his Report at page 3 to non-Pueblo issues. This limitation applies even in those instances where Pueblo lands and Non-Pueblo lands are irrigated from the same ditch. The Pueblo's rights will be determined separately under appropriate standards and criteria.

In its **third objection,** the Pueblo challenges the Special Master's recommendation at pages 20-22 to assign a 1907 priority date to certain ditches because the determination of that date "...may have been based on the equitable doctrine of relation back, when the ditch

2

was in fact constructed or extended after 1907, unless water rights for the lands served by such ditch were duly permitted or licensed after 1907". Pueblo's August 3,1993 Objections at 2.

The State responds that the basis for the Pueblo's objection is unclear. It explains that it did not employ the relation back doctrine when it developed the priority dates offered to the claimants. Rather, where its historian could not locate specific evidence of earlier irrigation from a particular ditch, the State used a 1907 priority date in the Order to Show Cause because that is the latest priority which can be claimed without a permit by the State Engineer. It assumes, but cannot confirm, that the Special Master made his recommendation using the same rationale. It suggests that this objection be addressed in the *inter sese* portion of the case. NM's August 17, 1993 Response at 7-8. (No. 2158).

The Report recommends a 1907 priority for most of the ditches serving claimants who were offered a 1907 priority by the State in the Orders to Show Cause. In those instances where the priority offered and the priority recommended are different, it appears that the Special Master relied upon the evidence presented by the State's expert, John Baxter. The Special Master states he did not discuss the basis for his findings where "there was either no challenge or little dispute". 1993 Report at 74. Since none of his discussion section included ditches with a 1907 date, it is not possible to determine the role the relation-back doctrine may have played in his decision making.

The Pueblo's objection is set aside. It may be raised again in the *inter sese* segment of the proceedings.

In its **fourth objection,** the Pueblo challenges the Report's use at page 7 of the hydrographic survey's designation of tracts 4.1 to 4.8 on the Lower Arroyo Seco Ditch as belonging to non-Pueblos. Pueblo's August 3,1993 Objections at 2. The State has agreed to review and, upon finding an erroneous designation, to correct the ownership of the challenged tracts. The Pueblo and the State shall conduct the necessary review and shall file a report or a stipulated order with the Court within 30 days of the entry of this Opinion.

In its **first objection,** the Pueblo challenges the Report's recommendations at pages 4-5, 18, & 74-5 that priorities be determined on a ditch-wide or 'ditch-by-ditch' basis and applied to specific state-law water right claims. Pueblo's August 3,1993 Objections at 1. It asserts that a) the State's approach adopted by the Special Master is insufficient for adjudication purposes; b) under state law, priorities must be determined on an individual tract or 'tract-by-tract' basis; c) the court in <u>State of New Mexico v. Aamodt *et al.*</u>, 66cv06639, Memorandum Opinion and Order entered February 26, 1987 (No. 2978), set out the correct legal analysis of the issue; and d) the State has offered no valid reason why the <u>Aamodt</u> analysis should not apply here. Pueblo's December 16,1993 Response re Objections (No. 2211) at 1-2.

The Pueblo argues that use of a common ditch date is based on the highly unlikely assumption that the ditch was constructed jointly by all its users and that this assumption is particularly suspect where Pueblo constructed ditches are involved. According to the Pueblo, it is more realistic to assume that non-Pueblo settlement on a particular ditch occurred at different times over the years, rather than all at once. *Id.* at 3.

4

The State argues that I am not bound by the Aamodt court's rulings. It alleges, and the Pueblo does not deny, that evidence of first use is scarce for the Taos area. It explains that:

> ...establishing the priorities... through... documentation showing earliest use of an acequia is the most reliable, fair, and accurate method available for assigning priorities to individual water rights holders located along those acequias. ...[D]ating water rights based upon first documented application of water to a specific tract of land rather than by first use of an acequia, would generally result in much later priority dates for the majority of water right holders... [and] work a hardship on individual water right holders for whom detailed historical records by tract are simply not available by setting much later priorities than can otherwise be reasonably established.

NM August 17, 1993 Response at 3. (Brackets added.)

**Discussion:** As noted in the Background section above, the Special Master's Report is focused on matters in the second or subfile stage of the adjudication where the debate is between the State and the claimants of state law water rights. Therefore, the Pueblo's fourth objection, as it relates to specific state rights, is premature. In the interest of judicial efficiency, however, I will rule on the objection to ditch-by-ditch priority determination to provide direction to the Special Master and the parties as they move through specific *inter sese* objections.

The primary issue to be addressed is, whether in the Taos case, the State's ditch-by-ditch efforts to determine priorities were sufficient or whether it must undertake a tract-by-tract analysis. Assuming that their standard ditch-by-ditch approach was sufficient, the State directed its expert historian, John Baxter:

> to examine all archival sources that [he] was able to find that would provide historical information for determining priorities... [and] the history of water use in the Taos Valley between the Rio Hondo and the Rio Grande del Rancho. [He]... was instructed to prepare a report and, finally, to... establish priorities for each acequia... in that area.

5

November 29, 1990 Transcript of Special Master's Evidentiary Hearing at 716.

> [T]he main thing that [he] was trying to find, and the ultimate purpose was, in addition to establishing what the history of water use in the Taos Valley might be, to determine as near as possible the first use of water for irrigation from a stream system, and more particularly, [for] a community, and finally, [for] a particular ditch, wherever possible.

*Id.* at 719. (Brackets added.)

The State used ditch dates recommended by Mr. Baxter in the Orders to Show Cause sent to all known claimants. 1993 Report at 75. Certain claimants objected to the proposed dates. The Special Master heard evidence and arguments at hearings held between 1990-1992. The record shows that witnesses for the claimants, including their historian, Malcolm Ebright, responded to Mr. Baxter's priority recommendations and provided evidence at the hearings of earlier dates for their ditches. In each instance, the experts and witnesses focused only on ditch-wide dates and not dates for individual tracts. The Report recommends the dates supported by Mr. Baxter. *Id*. at 6-10, 18-23 & 74-81.

I agree with the State that, as a matter of federal law, this Court is not bound by determinations of the law made by other courts in the same District. Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 & n. 7 (3rd Cir. Del. 1991); Willner v. Budig, 848 F.2d 1032, 1035 (10th Cir. 1988); Valencia v. Stearns Roger Mfg. Co., 124 F.Supp. 670, 675 (D.N.M. 1954). That being said, nothing prevents me from considering the analysis of the Aamodt court and taking direction from or adopting it, if appropriate. *See e.g.,* State of New Mexico ex rel. State Engineer v. Abeyta, 69cv07896, Memorandum Opinion and Order (D.N.M. Dec. 21, 2001) (No. 2874).

Our sister court has examined the very question of how to determine non-Pueblo priorities. *See* 1987 Aamodt Opinion at pages 22-27. It first considered the legal presumption which, according to the State, is used implicitly in water adjudications by New Mexico state and federal courts:

> ...If there is substantial evidence to support the date an irrigation ditch was constructed or used or the date land under a ditch was irrigated, then that date may be the priority for all water rights under the ditch, unless there is substantial evidence to rebut the presumption of a common priority date for the ditch.

and noted that:

> New Mexico takes this approach to avoid 'protracted litigation with a multitude of priorities [and the practical] impossib[ility] [of] allocating water within the ditch in accordance with adjudicated priorities'.

1987 Aamodt Opinion at 22-23, (quoting NM July 29, 1986 Aamodt Brief at 14 &16). (Brackets in the original.)

Turning to New Mexico state law, the court quoted from Snow v. Abalos, 140 P. 1044, 1049 (1914):

> ...Each individual water user under a community acequia [is] the owner of a right to take water from the public stream or source from which it was drawn, which right was divorced from and independent of the right enjoyed by his co-consumer; that the fact that such water was diverted into a ditch, owned in common with other water users, did not give such other users any interest in, or control over the right to take water, or water right which each individual consumer possessed; that the right to divert water, or the water right, is appurtenant to specified lands, and inheres in the owner of the land; that the right is a several right, owned and exercised by the individual....

The court also cited Millheiser v. Long, 61 P. 111, 113 (1900) in which the New Mexico Supreme Court held that priority of appropriation to beneficial use, not priority of diversion, applied to determining water rights. The Aamodt court concluded that as "...[a]ppealing as ditch-by-ditch priorities are, New Mexico state law requires tract-by-tract

priorities. Appropriators hold water rights individually based on satisfaction of the prerequisites for prior appropriation of their tract...". 1987 Aamodt Opinion at 23.

The Aamodt court recognized that the parties could design another approach, stating that:

> ...For adjudications, any procedure in 'substantial compliance with the requirements of the adjudication statutes and a reasonable and practical way to accomplish the desired purposes,' may be adopted. [State v. Pecos Valley Artesian Conservancy Dist., 99 NM 699, 700, 663 P.2d 358 (1983).] As possibilities, the State Engineer could further refine the orders to show cause on the basis of [a] more thorough review of tract-by-tract usage, tract-by-tract priorities could be the subject of *inter se* hearings involving individual appropriators... or all parties might agree to ditch-by-ditch priorities which would make it the law of the case....

1987 Aamodt Opinion at 27.

I have made an independent review of applicable state law and find that while the Constitution and statutes identify priority as a critical element of the individual right to the use of water, they do not designate a specific procedure for determining priority. *See* N.M. Const. art. XVI, §2 ("priority of appropriation shall give the better right"); N.M.S.A. (1978) §72-1-2 ("...Priority in time shall give the better right. In all cases of claims to the use of water initiated prior to March 19, 1907, the right shall relate back to the initiation of the claim..."); N.M.S.A. (1978) §72-1-3 & §72-12-5 (any entity making a claim to a pre-1907 right to water use may file a declaration describing that right and include the date of first application to beneficial use therein); N.M.S.A. (1978) §72-4-19; (priority is an element to be determined for each water right adjudicated under state law).

The state court also has not directly addressed this problem, but it has made findings and conclusions which inform this issue. In Millheiser v. Long, 61 P. 111, 113 (1900), the court quoted irrigation specialist Clesson S. Kinney, (Kinney on Irrigation and Water Rights,

1st Ed.), "[a]n appropriation of water cannot be constructive, but must be actual", and held that the priority attaches to amount actually beneficially used, not the amount diverted. Later, the court recognized that a) individuals, not community ditches, make appropriations, b) the right to take water from a ditch is an individual right and c) that right should be adjudicated to the individual appropriator. <u>Snow v. Abalos</u>, 140 P. 1044, 1047-9 (1914). The New Mexico appeals court ruled that priority is based upon proof of application to beneficial use. <u>State of New Mexico v. McDermett</u>, 901 P.2d 745, 748 (Ct. App. 1995).

>Kinney, in his second edition of <u>Irrigation</u> weighs in again:

>[A] single ditch may convey water under several appropriations having separate and distinct priorities. [<u>Kinney on Irrigation</u>, §777, at 1352 (2nd Ed. 1912), (citing <u>Taughenbaugh v. Clark</u>, 40 P. 143 (Colo. App.1895); <u>Farmers' Indep. Ditch Co. v. Agricultural Ditch Co.</u>, 45 P. 444 (Colo. App.1896)]…

>[In] all jurisdictions, a valid appropriation may be made by the actual use of the water for some beneficial purpose... Where this is the case, the date of the priority is that of the actual use of the water. [<u>Kinney on Irrigation</u>, §777 at 1353.]

(Brackets added.)

I agree with the <u>Aamodt</u> court that, under state law, the priority element of a water right is determined by the first use of water by the individual who developed the right. If, however, as the State argues, historic evidence of first use is unavailable, it is not possible to make that specific determination. Since the Pueblo did not challenge this assertion, I find that I must adjudicate many very old, non-Pueblo water rights without adequate historic evidence of individual first use.[1] To do this I need an approach which will closely approximate findings of dates of first use despite these limitations. I disagree with the

---

[1] I note that at least one other court in the west has encountered this problem. See A Water Right Mediation Handbook of the Montana Water Court, 1993, page 1 ("Modern courts are required to adjudicate water rights of ancient origin with less than perfect evidence.").

9

Pueblo that the earliest available documentation of water use, even where it does not record the date of first use, is a sufficient alternative for determining these priorities, because it is likely to result in dates later, even considerably later, than first use. Therefore, I must devise a method of determining these priorities which is in "substantial compliance with the requirements of the adjudication statutes and which provides a reasonable and practical way to accomplish the desired purposes". State of New Mexico *ex rel*. State Engineer v. Sharp, 344 P.2d 943, 946 (1959).

The State opened the search for priorities with evidence of earliest first use on each ditch. This base-line effort alone is insufficient for complete adjudication of individual rights. However, as in the usual course of adjudications, claimants have had an opportunity to prove earlier dates during the subfile phase and objectors will have the opportunity to prove later dates during the *inter sese* phase, thereby achieving, under these circumstances, a reasonable, practical and sufficient approximation of first use dates. It is unnecessary for the State to reopen priority research in this instance and in the interest of judicial economy and concluding this case in the foreseeable future, I will not require it.

The approach outlined above is reasonable and practical. It delivers priority dates where evidence of first use is unavailable. It substantially complies with the statutes by providing a priority as required under N.M.S.A. 1978 § 72-4-19 with a best effort, in the face of unavailable historic resources, to individualize priorities according to the first use.

IT IS SO ORDERED.

/electronic signature/
JOHN EDWARDS CONWAY
UNITED STATES DISTRICT JUDGE