IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, *ex rel.*
State Engineer, *et al.*,

      Plaintiffs,

v.

EDUARDO ABEYTA, *et al.,* and
CELSO ARELLANO, *et al.*,

      Defendants.

69cv07896 BB-ACE
<u>RIO TAOS ADJUDICATION</u>

69cv07939 BB-ACE
<u>RIO HONDO ADJUDICATION</u>

(CONSOLIDATED)

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Objections to the Special Master's Report (Doc. No. 2162, filed August 23, 1993). The Court has reviewed the Report of the Special Master (Doc. No. 2143, filed July 23, 1993) regarding priority dates, the submissions of the Parties and the relevant law. For the reasons set forth below, the Court adopts in part and rejects in part the findings and recommendations for priority dates in the Report of the Special Master for the thirteen acequias addressed in the Objections to the Special Master's Report (Doc. No. 2162, filed August 23, 1993).[1]

**Background**

This is the third Memorandum Opinion and Order addressing the findings and recommendations regarding Non-Pueblo Defendants' priority dates in the Report of the Special Master (Doc. No. 2143, filed July 23, 1993). The Court's first Memorandum Opinion and Order describes in detail the procedural history leading up to the Report of the Special Master. (*See* Doc.

---

[1]Those thirteen acequias are Acequia Madre de La Loma, South Loma Lateral, Acequia Madre del Prado, Acequia del Medio del Prado, Lower Arroyo Seco Ditch, Martinez and Brazitos Laterals of the Acequia Madre del Rio Lucero del Arroyo Seco, Los Cordovas Ditches No. 1 and No. 2, Acequia Madre del Sur del Canon, Acequia Madre del Norte del Canon, Molino Ditch and Sanchez Ditch.

No. 3102, filed February 21, 2003). After the State developed the necessary priority evidence, the Non-Pueblo Defendants were served with individual Notices of Order to Show Cause why provisional judgment, subject to *inter se* claims of other parties, should not be entered declaring their water rights priority to be that found in the State's historical studies. (*Id.*) The Court's first Memorandum Opinion and Order addressed priorities for those ditches which did not file objections to the offered priority dates found in the individual Notices of Order to Show Cause. (*Id.*).

During November 26-30, 1990, May 20-21, 1991, and February 4, 1992, the Special Master heard evidence presented by the acequias and some individuals regarding their objections. The November 1990 hearings dealt with the thirteen acequias addressed in this Opinion. The May 1991 hearings addressed customs. And the February 1992 hearing dealt with Rio Hondo priorities which will be addressed in a subsequent Opinion as described below. On July 23, 1993, the Special Master entered his Report, (Doc. No. 2143), containing, among other things, his findings and recommendations on the claims of some Non-Pueblo Defendants to priority dates earlier than those proposed by the State. The Court's second Memorandum Opinion and Order regarding this matter adopted the findings and recommendations for priority dates for those acequias that objected to offered priority dates in the Notices of Order to Show Cause but did not object to the Report of the Special Master. (*See* Doc. No. 4419, filed February 19, 2004).

This third Memorandum Opinion and Order addresses the objections of thirteen of the acequias to the Special Master's findings and recommendations regarding priority dates. (*See* Objections to the Special Master's Report, Doc. No. 2162, filed August 23, 1993, and the associated briefs, Doc. Nos. 2203 and 2204, both filed November 22, 1993; Doc. Nos. 2223 and 2224, both filed January 12, 1994; Doc. Nos. 2235 and 2236, both filed February 14, 1994).

A fourth Memorandum Opinion and Order addressing the findings and recommendations regarding the Rio Hondo acequias' priority dates in the Report of the Special Master will be entered after the stay of proceedings on the Rio Hondo priorities expires on January 31, 2006. (*See* Doc. No. 4650, filed August 12, 2005).

**Standard of Review**

The standard of review in effect when the Special Master filed his report, and when the Parties filed their objections and related briefs, was clear error. *See* FED. R. CIV. P. 53(e)(2) (1993) ("in an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous"). FED. R. CIV. P. 53 was amended on December 1, 2003. Under the amended rule, the court must decide all objections to a master's recommended findings of fact *de novo*, unless the parties have stipulated with the court's consent that the Special Master's findings will be (1) reviewed for clear error, or (2) final. *See* FED. R. CIV. P. 53(g)(3). The Supreme Court's order of March 27, 2003, amending Rule 53 states that the amended rule "shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." *See also Bradley v. Richmond School Bd.*, 416 U.S. 696, 711 (1974) (court is to apply the law in effect at the time it renders a decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary).

The Court concludes that it is just and practicable to apply the amended rule here and has conducted a *de novo* review. *See* FED. R. CIV. P. 53(g)(3) advisory committee's note for 2003 Amendments ("Clear-error review is more likely to be appropriate with respect to findings that do not go to the merits of the underlying claims or defenses, such as findings of fact bearing on a privilege objection to a discovery request"); *see also La Buy v. Howes Leather Co.*, 352 U.S. 249,

256 (1957) (the use of masters is to aid judges in the performance of specific judicial duties and not to displace the court).

Accordingly, the Court has reviewed the 906 pages of transcript and 185 exhibits from the five-day hearing before Special Master Frank B. Zinn on November 26-30, 1990. The Court has also reviewed the Report of the Special Master, (Doc. No. 2143, filed July 26, 1993), the Objections to the Special Master's Report, (Doc. No. 2162, filed August 23, 1993, and the associated briefs, (Doc. Nos. 2203 and 2204, both filed November 22, 1993; Doc. Nos. 2223 and 2224, both filed January 12, 1994; Doc. Nos. 2235 and 2236, both filed February 14, 1994).

In this case it is the function of the Court to judge the credibility of witnesses, to appraise their testimony, to weigh contradictory testimony and conflicting circumstances, and to draw the ultimate conclusions as to the facts. *See McKenna v. Scott*, 202 F.2d 23, 24 (10th Cir. 1953). "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Fact finding does not require mathematical certainty. [The fact finder is] supposed to reach [its] conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn." *Schulz v. Pennsylvania Railroad Co.*, 350 U.S. 523, 526 (1956). An inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation. *Daniels v. Twin Oaks Nursing Home*, 692, F.2d 1321, 1324 (11th Cir. 1982).

The Defendant Acequias presented testimony from three expert witnesses and the State presented testimony from one expert witness. The Court has considered the expert witnesses' qualifications, opinions and the facts, principles and methods upon which their opinions are based.

Before discussing its findings on priority dates for the thirteen objecting Acequias, the Court will briefly discuss the credibility of each of the expert witnesses.

**The Acequias' Geomorphology Expert Witness**

Jay Lazarus has expertise in hydrology, geology and geomorphology. (Tr. at 225). Mr. Lazarus evaluated the relative dates of construction of acequias in the following four irrigation systems: 1) the El Prado - La Loma area; 2) Upper and Lower Ranchitos area; 3) Rio Grande del Rancho; and, 4) Acequia Madre del Rio Lucero De Arroyo Seco. (Defs.' Ex. 21). He did not provide dates for any ditch but testified that ditches in a single system were constructed at about the same time. (Tr. at 238).

Mr. Lazarus reviewed a map showing the locations of the acequias and rivers in the Taos area. (Defs.' Ex. 21). He noted that "generally, the acequias that flow into the river valleys have [points where the acequia system returns water to the river that was not diverted into laterals], while the acequias that flow onto the mesas do not have [such discharge points]." (Defs.' Ex. 21, Tr. at 248). He testified that it "is likely that . . . laterals were constructed contemporaneous with or soon after construction of the acequias to efficiently irrigate all the land below the acequias." (Tr. at 250). His opinion that ditches within an acequia system were constructed at about the same time is based on the fact that they share a common discharge point back to the river. (Tr. at 255, 273, 278-281, 293; Defs.' Ex. 21).

Having considered Mr. Lazarus' qualifications and experience, and the reasons given in support of his opinion, the Court rejects his testimony in whole. Mr. Lazarus is not an engineer and has never been involved in the construction of an acequia system. (Tr. at 280, 290, 304). He testified that a common discharge point could have been engineered after several acequias were constructed.

(Tr. at 281). He also testified that ditches that share a common discharge point could have been constructed at different times. (Tr. at 303-304).

**The Acequias' Historical Expert Witness**

Malcolm Ebright ("the Acequias' Expert") is a lawyer with experience reviewing historical data regarding New Mexico land grants. (Tr. at 38, 41). He was admitted in this case as an expert regarding the settlement of the various land grants and priority dates. (Tr. at 44).

Mr. Ebright used the following approach to determine priority dates. He first reviewed historical documents and compiled a chronology of settlement in the Taos Valley. (Tr. at 41-45). He then assumed that acequia construction was one of the first acts that occurred at the time of settlement. (Tr. at 46). His assumption was based upon an entry in the Narratives of the Coronado Expedition stating that Spaniards began construction of an acequia at San Juan one month after arrival. (Tr. at 46, Defs.' Ex. 3). He testified that any indication that people had settled in an area would be an indication that they were farming and that there was irrigation. (Tr. at 69). Mr. Ebright also relied on references in historical documents to "farmland," which he inferred to be irrigated, and on references to ditches. (Tr. at 70, 87, 121, 123,125, 145, 152). He then determined dates when irrigation generally began in a particular area. (Tr. at 179-180, 218). He did not propose specific priority dates for specific ditches based solely upon his research. (Tr. at 155, 159, 178-180, 218).

The specific priority dates for specific ditches that Mr. Ebright testified to were based on his research and a hypothetical fact. The hypothetical fact was that all of the ditches in a particular area were built at the same time. (Tr. at 131, 133-134, 136-138).

The Court gives Mr. Ebright's testimony limited weight. The Court is persuaded by his testimony that irrigation began shortly after an area began to be settled. The Court also gives some

weight to Mr. Ebright's estimates of when certain areas began to be settled. However, the Court does not give any weight to his proposed specific priority dates for specific ditches which were based on the hypothetical fact that all ditches in the area were constructed at about the same time. This seems unlikely given the historical sources showing very different climatological and thus river conditions in the centuries ensuing since settlement. Mr. Ebright was not aware of any evidence suggesting that all acequias in a stream system were constructed at the same time. (Tr. at 174-175). The only evidence offered to support the hypothetical fact was the testimony of Mr. Lazarus, which the Court has rejected. Thus, the specific dates proposed by Mr. Ebright are merely possibilities or speculation.

**The Acequias' Archeological Expert Witness**

Jeffrey L. Boyer, an archeologist, determined that a Hispanic torreon near Arroyo Seco in the Taos valley was used from about 1740 to 1790. (Tr. at 544, Defs.' Ex. 25 at i). A torreon is a circular structure, usually with two stories, constructed of adobe and rock. (Defs.' Ex. 25 at 5-6). Mr. Boyer opined that by dating the torreon, he provided dates for Hispanic settlement in the Arroyo Seco area and, by implication, water use in the same area. (Tr. at 669). He also visited three other torreon sites near the Rio Grande del Rancho. (Defs.' Ex. 25 at 20).

The Court gives Mr. Boyer's testimony very limited weight. The Court is persuaded by his testimony that some settlement occurred in the Arroyo Seco area from about 1740 to 1790. However, Mr. Boyer did not opine regarding the extent of settlement or the construction of acequias in the Arroyo Seco area but instead stated that the "data suggest the presence of scattered Hispanic farms and ranchos . . . and *may* support a 1747 priority date [for the Arroyo Seco acequia and laterals.]" (Defs.' Ex. 25, at i, *emphasis added*). The Court cannot reasonably infer a 1747 priority

date for the Arroyo Seco acequia and laterals on the grounds that Mr. Boyer's data may possibly support such a date.

**The State's Historical Expert Witness**

John O. Baxter, ("State's Expert"), a historian, examined several archival sources that would provide information on the history of water use in the Taos Valley. (Tr. at 710, 716). Those sources include the Spanish Archives of New Mexico and the Mexican Archives at the State Records Center, the records of the Surveyor General and the Court of Private Land Claims, County records, records of the probate court and the U.S. District Court, certain special or private collections at the State Records Center and the University of New Mexico, deed records at the Taos County Courthouse, and Declaration files at the New Mexico Office of the State Engineer. (Tr. at 716-718). Mr. Baxter attempted to determine the priority date for each acequia based upon documentary evidence of water use, for example when a deed mentioned an acequia by name as a boundary or indicated an acequia in a particular location. (Tr. at 716-723).

The Court finds Mr. Baxter's testimony persuasive on many points. The Court recognizes that the actual first use of water in a particular acequia may have occurred prior to such use being memorialized in an historical document. However, the Defendants have the burden of proving their priority date. (*See* Revised Supplement to Pretrial Order at 2, Doc. No. 1903, filed April 3, 1990; *see also* 32A C.J.S. *Evidence* § 1310.b. (2002) (where evidence on an issue of fact is evenly balanced between the parties, the party having the burden of proof fails on that issue); *Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706, 731 (2d Cir. 2001) (same). Where Defendants fail to meet their burden, the Court will not speculate or guess at possible dates earlier than those proposed by the State. *See Daniels v. Twin Oaks Nursing Home*, 692, F.2d 1321, 1324 (11th Cir. 1982)

(inference is not reasonable if it is only a guess or a possibility); *Andrus v. Gas Co. Of New Mexico*, 798 P.2d 194, 197 (N.M. App. 1990) (evidence which supports two inferences equally supports neither). Instead, the Court will adopt the priority dates supported by the State's evidence. *See* N.M. STAT. ANN. § 72-4-19 (decree adjudicating water rights must declare priority).

**Acequia Madre de La Loma, South Loma Lateral, Acequia Madre del Prado, and Acequia del Medio del Prado**

The State's Expert assigned a priority date of 1730 for the Acequia Madre del Prado and the Acequia del Medio del Prado. (Tr. at 796-798). In 1730, the Pueblo of Taos made a complaint to Governor Juan Domingo de Bustamante charging that livestock belonging to Sebastian Martin, a prominent citizen of Los Estiercoles, now known as El Prado, had damaged Indian agricultural lands. (Tr. at 796). Records from the ensuing litigation indicate that Martin raised large crops of wheat and corn each year from his rancho at El Prado. (Tr. at 796). The State's Expert apparently inferred the presence of irrigation from the large crops of wheat and corn.

The State's Expert assigned a priority date of 1805 for the Acequia Madre de La Loma and its subsidiary, the South Loma Lateral. (Tr. at 799). The priority date is based on affidavits. (Tr. at 799). On May 17, 1965, Juan Manuel Martinez, 79, testified that the Acequia Madre de La Loma had been built before 1805. His grandfather, Pasqual Martinez, had worked on the ditch as a young man. Two other persons declared that they believed that the ditch was constructed before 1800. (Tr. at 799).

The Acequias' Expert assigned a pre-Revolt priority date of 1680 and an alternative priority date of 1730 for Acequia Madre del Prado, the Acequia del Medio del Prado, Acequia Madre de La Loma, and the South Loma Lateral. (Tr. at 131-132).

Carlos Trujillo, born 1914, irrigates his land from the Acequia Madre de La Loma and the South Loma Lateral. (Tr. at 465-466). His family has been in Taos over 200 years. (Tr. at 466). Mr. Trujillo testified that his family settled in the area in the late 17th century based on family history. (Tr. at 470, 476). The settlers built the ditches at about the same time because they needed to raise crops to survive. (Tr. at 470, 476). Mr. Trujillo thought that the Acequia en Medio del Prado and the Acequia Madre del Prado, which are located to the northeast of his land, were built about the same time. (Tr. at 471).

The Court finds that the most persuasive evidence supports a priority date for the Acequia Madre del Prado and the Acequia del Medio del Prado of 1730.

The Acequia Madre de La Loma and the South Loma Lateral are located immediately southwest of the Acequia Madre del Prado and the Acequia del Medio del Prado for which the State's Expert proposed a priority date of 1730 based upon their proximity to Los Estiercoles. However for the former, the State's Expert proposed a date of 1805 based upon affidavits. The State's Expert admits that Estiercoles would include the area under irrigation by the Acequia Madre de La Loma. (Tr. at 843; *see also* Defs.' Ex. 2, 15). The Court is not persuaded by the State's Expert's argument that the Acequia Madre de La Loma and the South Loma Lateral should have a priority date different from the Acequia Madre del Prado and the Acequia del Medio del Prado. (*See* Tr. at 796-699, 840-843). The Court finds that the most reasonable priority date for the Acequia Madre de La Loma and its subsidiary the South Loma Lateral is therefore also1730.

**Lower Arroyo Seco Ditch**

All parties claiming water rights have the burden of pleading and proving their priority dates. (Doc. No. 1903, April 3, 1990, at 3). The parties can rely on the State's summary of their water

rights elements, stated in offers of judgment. (*Id.*). If they disagree with the elements of their water rights as proposed by the State, they may file independent statements of claims and may have a hearing upon their claims. (*Id.*). There was no testimony regarding the priority date for the Lower Arroyo Seco Ditch during the November 26-30, 1990, hearing. Therefore, the Court finds that the priority date for the Lower Arroyo Seco Ditch is 1907, as reflected in the State's Notices of Order to Show Cause. (*See* Doc. No. 1646 , filed September 20, 1989).

**Martinez Lateral and Brazitos Lateral of the Acequia Madre del Rio Lucero del Arroyo Seco**

The State's Expert assigned a priority date of 1815 for the Martinez and Brazitos Laterals of the Acequia Madre del Rio Lucero del Arroyo Seco. (Tr. at 792). In a decision issued in 1823 concerning water use from the Rio Lucero, the Taos municipal council asserted that the community of Arroyo Seco, which is located approximately 1.5 miles southeast of the Martinez and Brazitos Laterals, had been founded in 1815. (Tr. at 791-792). During litigation begun in the late 19th Century concerning land and water issues, various witnesses testified that the Acequia Madre del Rio Lucero had been built soon after the original settlement. (Tr. at 792).

The Acequias' Expert assigned a priority date of 1815 (Tr. at 138-139).

Fermin Torres is a commissioner of the Acequia Madre del Rio Lucero del Arroyo Seco and is familiar with the irrigation of lands in the area. (Tr. at 92-94). Mr. Torres provided a copy of a Declaration of Ownership of Water Right which states that the Acequia Madre of Arroyo Seco and Rio Lucero was constructed on or about 1747. (Tr. at 96, Acequia Madre de Arroyo Seco Ex. 1). He did not have any other knowledge regarding why the date of 1747 was included on the declaration. (Tr. at 97). Mr. Torres testified that Martinez and Brazitos Laterals were built at about

the same time as the Acequia Madre del Rio Lucero del Arroyo Seco, based upon the story his great-grandparents told him. (Tr. at 102-103).

Defendants and the State agree that Martinez and Brazitos laterals should have the same priority as the Acequia Madre del Rio Lucero del Arroyo Seco and its other ten laterals. (Doc. No. 2203, filed November 22, 1993, 14-18; Doc. No. 2224, filed January 12, 1994, at 20; Doc. No. 2236, filed February 14, 1994, at 11). The Court finds that the priority date for the Martinez and Brazitos Laterals of the Acequia Madre del Rio Lucero del Arroyo Seco is 1815.

The Court's Order adopting the 1815 priority date for the other laterals of the Acequia Madre del Rio Lucero del Arroyo Seco inadvertently omitted adopting the 1815 priority date for the Acequia Madre del Rio Lucero del Arroyo Seco. (*See* Doc. No. 4419, filed February 19, 2004, t 2-3). The Court now adopts the priority date of 1815 for the Acequia Madre del Rio Lucero del Arroyo Seco.

**Los Cordovas Ditch No. 1 and Los Cordovas Ditch No. 2**

The State's Expert assigned a priority date of 1824 to Los Cordovas Ditch No. 1 and Los Cordovas Ditch No. 2. (Tr. at 741). The 1824 priority is based upon a May 3, 1824 request by Antonio Aban Cordoba to Governor Bartolome Baca. (State's Ex. 16). In it, Mr. Cordoba states he is not being given water to which he is entitled, and asks that he be allowed to use water. (State's Ex. 16). In 1942, representatives of both Los Cordovas Ditches based their water rights claims on Mr. Cordoba's request when filing for an 1824 priority date with the State Engineer. (Tr. at 741).

The Acequias' Expert assigned a pre-Revolt priority date of 1680 and an alternative priority date of 1730 for Los Cordovas Ditch No. 1 and Los Cordovas Ditch No. 2. (Tr. at 138).

Juan I. Valerio, born 1922, is familiar with the ditches in the Talpa and Ranchos area, including Los Cordovas No. 1 and Los Cordovas No. 2. (Tr. at 321-323). He did not have any

knowledge as to when the ditches were built but recalled that his grandfather indicated all the ditches in the area were built about the same time. (Tr. at 325-326).

Danny Martinez, born 1955, is familiar with the ditches in the Talpa and Ranchos area, including Los Cordovas No. 1 and Los Cordovas No. 2. (Tr. at 333). His family has resided in the area for four generations. (Tr. at 333). Mr. Martinez, based on stories passed down from his ancestors and the age of an adobe church, that all the ditches in the area were built within a five-year period, 1710-1715. (Tr. at 334, 337).

Gabriel V. Chavez irrigates from Los Cordovas No. 1 and No. 2. (Tr. at 354). He remembers his father helping build Los Cordovas No. 2 "around 1930, the 1940s," possibly in 1942. (Tr. at 366). Mr. Chavez stated that Los Cordovas No. 2 was a replacement for an earlier ditch, but he did not know the history of the earlier ditch. (Tr. at 368).

Candido Valerio, born in 1922, lived in the area and testified that Los Cordovas No. 2 was not there in 1942 when he left for the service but was built when he returned in 1945. (Tr. at 429, 442). He did not know when Los Cordovas No. 1 was constructed. (Tr. at 442-443). Mr. Valerio did not know a "definite date" when the acequias in this area were built but figured the Spanish were farming before 1700 because they had to eat and furnish their own food. (Tr. at 439). He testified that all the ditches must have been built about the same time because the people "could work pretty fast. They worked day and night. They didn't have days off, so they were in a hurry to feed themselves." (Tr. at 440).

After considering the record, the Court finds that the priority date for Los Cordovas Ditch No. 1 and Los Cordovas Ditch No. 2 is 1824.

**Acequia Madre del Sur del Canon and Acequia Madre del Norte del Canon**

The State's Expert assigned a priority date of 1796 to the Acequia del Sur del Canon and the Acequia del Norte del Canon, both of which are on the Rio Fernando within the Don Fernando de Taos Grant. (Tr. at 752). The 1796 priority is based upon land grant and census records that indicate settlement on the Rio Fernando beginning in 1796, with the community of Canon being established about that time. (Tr. 752). The State's Expert did not find any evidence to support the 1760 priority date claimed by the Acequia del Sur del Canon and the Acequia del Norte del Canon in their declarations of water rights. (Tr. at 757).

The Acequias' Expert assigned a pre-Revolt priority date of 1680 and an alternative priority date of 1730 for the Acequia del Sur del Canon and the Acequia del Norte del Canon. (Tr. at 136-137).

The Court finds that the most persuasive evidence supports 1796 as the priority date for the Acequia del Sur del Canon and the Acequia del Norte del Canon.

**Molino Ditch and Sanchez Ditch**

The State's Expert assigned a priority date of 1800 for the Molino and Sanchez Ditches. (Tr. at 765-766). The Molino and Sanchez ditches are located on the Rio Pueblo de Taos, north of the village of Taos. (Def.'s Ex. 2). The growing population of Taos caused an increased need for irrigation water. (Tr. at 761). In 1797, Governor Fernando Chacon authorized the residents of Taos to use surplus waters from the Rio Pueblo de Taos. (Tr. at 761--766). The residents used several ditches, including the Molino and Sanchez Ditches, to divert water from the Rio Pueblo de Taos to irrigate land north of Taos. (*Id.*).

The Acequias' Expert assigned a pre-Revolt priority date of 1680 and an alternative priority date of 1715 for the Molino and Sanchez Ditches. (Tr. at 133-134).

Mr. Felix Miera testified that the Molino and Sanchez Ditches were built at the same time as the other ditches in the area. (Tr. at 313-320). Mr. Miera's grandmother, who lived in the area and was born in 1877, told him that all the ditches in the area were constructed at the same time. (Tr. at 316). She obtained the information that the ditches were constructed at the same time from Mr. Miera's great-grandfather, who also resided in the area, was involved in irrigation, and was born in the early 1800's. (Tr. at 314-316).

The Court finds that the priority date for the Molino and Sanchez Ditches is 1800.

**Subfile Irrigation Water Rights**

The priority date for each valid subfile irrigation water right is the priority date adopted in this Order for the acequia which serves it.[2] (*See* Doc. No. 3026, filed May 13, 2002, at 10, "claimants have had an opportunity to prove earlier dates during the subfile phase and objectors will have the opportunity to prove later dates during the *inter sese* phase"). The priority dates adopted in this Order do not apply to individual subfile water right claims previously denied by the Court. All water right claims denied have a priority date of "None."

The Court will issue Orders to Show Cause to the current claimants of valid subfile irrigation water rights that were inadvertently excluded from the 1989 order to show cause process.

**IT IS SO ORDERED.**

                                                             **BRUCE D. BLACK**
                                                             **UNITED STATES DISTRICT JUDGE**

---

[2] The dates adopted do not apply to supplemental irrigation wells or springs.