**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO, *ex rel.*
State Engineer, *et al.*,

     Plaintiffs,

v.

EDUARDO ABEYTA, *et al.*, and
CELSO ARELLANO, *et al.*,

     Defendants.

69cv7896 MV/WPL
Rio Taos Adjudication

69cv7939 MV/WPL
Rio Hondo Adjudication

Consolidated

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on:

(i) the Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5927 ("Special Master's Report");

(ii) the Joint Motion to Adopt Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water rights of Taos Pueblo, Doc. 5930 ("Joint Motion to Adopt Special Master's Report");

(iii) Defendant-Objectors' Brief in Opposition to the Settling Parties' Joint Motion to Approve and Enter Partial Final Judgment Opening Briefs and Request for Mandamus, Doc. 5842 ("Dunn Group Objections");

(iv) Objections to the Special Master's Report and Recommendations by the Estate of Jose Manuel Santistevan, Doc. 5931 ("Estate Objections");

(v) Jerome F. Lucero's Continued Concerns on the Special Master Recommendations to the Court from a *Pro Se* Objector, Doc. 5934 ("Lucero Objections");

(vi) Glorianna D. Atencio's Objections to Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5935 ("Atencio Objections"); and

(vii) Alfred Trujillo's Objection to Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5936 ("Trujillo Objections").

For the reasons stated below, the Court will **ADOPT** the Special Master's Report, **GRANT** the Joint Motion to Adopt Special Master's Report, and **OVERRULE** the Objections by the Dunn Group, the Estate, Mr. Lucero, Ms. Atencio and Mr. Trujillo.

**Procedural Background**

In 1989, the United States and Taos Pueblo filed statements regarding Taos Pueblo's water rights claims. *See* Special Master's Report at 3. Discussions to settle Taos Pueblo's water rights claims began in 1989-1990, a draft settlement agreement was completed in 2006, and the Taos Pueblo Indian Water Rights Settlement Act, Title V of the Claims Resolution Act of 2010, Pub. L. No. 111-291, 124 Stat. 3064, 3122-34 (2010) ("Settlement Act") approved the settlement agreement. *See* Special Master's Report at 4-5. After further negotiations to conform the draft settlement agreement to the Settlement Act, the conformed Settlement Agreement was submitted to the appropriate governing bodies and officials, and then executed by the Secretary of the Interior.

On March 11, 2013, the Court entered its Procedural and Scheduling Order for Review of Proposed Settlement Agreement and Partial Final Judgment and Decree on the Water Rights of Taos Pueblo which approved the proposed notice of the Settlement Agreement and the proposed procedures for hearing objections to the Settlement Agreement. Doc. 5546. On May 31, 2013, the Settlement Parties filed their Joint Motion to Approve and Enter Partial Final Judgment and Decree on the Water Rights of Taos Pueblo. Doc. 5553 ("May 31, 2013 Joint Motion"). The Court entered two subsequent orders setting forth the procedure for the hearing of objections to the Settlement Agreement. *See* Doc. 5694, filed December 11, 2013; Doc. 5796, filed February 28, 2014. That procedure required the Settlement Parties to "file briefs or memoranda in support of the May 31, 2013 Joint Motion which were sufficient to frame the issues and demonstrate

legally cognizable grounds for the Joint Motion to be granted."  Special Master's Report at 7. Objectors then would file "response briefs that cite legal authority in support of their legal positions, set forth any facts that Objectors contend will show harm to them by entry of the [Partial Final Judgment and Decree], and specify which of the Settling Parties' allegations are disputed." Doc. 5796.

Memoranda in support of the May 31, 2013 Joint Motion were filed by the United States and Taos Pueblo (Doc. 5804), twelve Taos area Mutual Domestic Water Consumers Associations (Doc. 5807), the Taos Valley Acequia Association and 51 of its member Acequias (Doc. 5809), El Prado Water and Sanitation District (Doc. 5810), and the State of New Mexico (Doc. 5811).  Four Objectors filed responses: Jerome F. Lucero, *pro se* (Doc. 5832), Glorianna Atencio, *pro se* (Doc's 5841 and 5846), the Estate of Jose Manuel Santistevan (Doc's 5843 and 5845), and Alfred Trujillo, *pro se* (Doc. 5856).  The United States and Taos Pueblo (Doc. 5866) and the State of New Mexico (Doc. 5869) filed replies.  Alfred Trujillo filed a surreply (Doc. 5881).

Special Master Vickie L. Gabin then filed her Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5927.

**The Special Master's Report**

The Special Master adopted the following scope of review which was submitted by the United States and Taos Pueblo, concurred with by other Settlement Parties and not disputed by any Objector:

(i)  the procedural validity of this expedited *inter se* proceeding;

(ii) whether the Historic and Existing Use Water Rights in Section 3 of the Partial Final Decree are fair, reasonable and adequate;

(iii) whether the Additional Groundwater Right in Section 4 of the Partial Final Decree is fair, reasonable and adequate;

(iv) whether the Partial Final Decree is consistent with the Settlement Act and other governing law; and

(v) whether Objectors have shown that the entry of the Partial Final Decree will have an unreasonable or proscribed effect on them.

Special Master's Report at 8-9.

The Special Master adopted the following standard of review which was proposed by the United States and Taos Pueblo, was concurred with by other Settlement Parties, and was not disputed by any objector:

When reviewing a settlement agreement, the Court should find that it is: fundamentally fair, reasonable and equitable and does not violate the law or public policy, not illegal, a product of collusion or against the public interest, and is fairly secured, without fraud, misrepresentation or overreaching, and supported by consideration. Generally,

[i]n assessing whether the settlement is fair, reasonable and adequate the trial court should consider: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; . . . and (4) the judgment of the parties that the settlement is fair and reasonable.

The effect on third parties should be neither unreasonable nor proscribed. And, as this Court has previously ruled in another federal stream system adjudication, requiring objectors to show in a legally cognizable way how they will be harmed by a settlement agreement is consistent with New Mexico water law.

Special Master's Report at 9-10 (citations omitted)

After liberally construing the objections, the Special Master made the following findings and recommendations:

A. The expedited *inter se* proceedings comport with due process requirements;

B. The "fair, reasonable and adequate" standard of review proposed by the Settlement Parties is the appropriate lens through which to evaluate the Objectors' objections;

C. The scope of review proposed by the Settlement Parties appropriately defines the scope of the Court's review of the Partial Final Decree;

D. None of the objections brought by Ms. Atencio, Mr. Lucero, the Santistevan Estate and Mr. Trujillo raise legal or factual issues sufficient to overcome the "fair, reasonable and adequate" standard of review for this Settlement Agreement; and

E. None of these Objectors have demonstrated specific harm or injury to their water rights that would occur as a result of the entry of the Partial Final Decree.

I recommend, therefore, that the Court overrule the objections.

I recommend further that the Court stay all further action on the May 31, 2013, Joint Motion until the Settlement Parties notify the Court that the conditions precedent set forth in Sections 509(f)(2)(D) through 509(f)(2)(F) of the Settlement Act have been satisfied.

Special Master's Report at 10, 15-16.

The United States, the State of New Mexico, Taos Pueblo, the Taos Valley Acequia Association on its own behalf and 51 of its 55 member Acequias on their own behalves, 12 Taos Area Mutual Domestic Water Consumers' Associations, the Town of Taos, and the El Prado Water and Sanitation District (the "Settlement Parties") filed a Joint Motion to Adopt the Special Master's Report and Recommendations, Doc. 5930.  One party represented by counsel, the Estate of Jose Manuel Santistevan, Doc. 5931, and three *pro se* parties, Jerome F. Lucero, Doc. 5934, Glorianna D. Atencio, Doc. 5935, and Alfred Trujillo, Doc. 5936, filed objections to the Special Master's Report and Recommendations.

**The Joint Motion to Adopt the Special Master's Report**

The Settlement Parties agree with the Special Master's findings and recommendations concerning the objections filed by Atencio, Lucero, Trujillo and the Estate, for the reasons the

Settlement Parties set forth in the briefs they filed in support of the May 31, 2013 Joint Motion (Doc. 5553). *See* Joint Motion to Adopt Special Master's Report at 1-2.

The Settlement Parties note that there is some ambiguity regarding the objections filed by the Dunn Group. *See* Joint Motion at 2. The Dunn Group is a group of defendants represented by attorney A. Blair Dunn. The Dunn Group filed a response, Doc. 5842 ("Dunn Group Objections"), opposing the Settlement Parties' May 31, 2013 Joint Motion to approve and enter the partial final judgment and decree. That response also included a request for mandamus relief which the Court denied on February 11, 2015. *See* Doc. 5929. The Special Master's Report, which was filed before the Court denied the Dunn Group's request for mandamus, does not address the objections filed by the Dunn Group. The Settlement Parties assert that there is some ambiguity on the record to the extent that the Dunn Group's objections to the May 31, 2013 Joint Motion differ from their request for mandamus relief. *See* Joint Motion at 2.

The Special Master recommended that the Court stay all further action on the May 31, 2013 Joint Motion until the Settlement Parties notify the Court that the conditions precedent set forth in Sections 509(f)(2)(D) through 509(f)(2)(F) of the Settlement Act have been satisfied. The Settlement Parties state that Section 509(f)(2)(F) has been satisfied and move the Court, if it overrules all objections to the May 31, 2013 Joint Motion including those filed by the Dunn Group, to stay these proceedings concerning the Taos Pueblo's water rights until notified that Sections 509(f)(2)(D) and (E) of the Settlement Act have been satisfied. Joint Motion at 4-6. For the reasons stated below, the Court will overrule all objections to the May 31, 2013 Joint Motion including those filed by the Dunn Group. The Court will therefore stay all proceedings concerning the Taos Pueblo's water rights until notified that Sections 509(f)(2)(D) and (E) of the Settlement Act have been satisfied.

No responses opposing the Settlement Parties' Joint Motion to adopt the Special Master's findings and recommendations have been filed.  The Court will grant the Joint Motion to Adopt the Special Master's Report.

**Dunn Group Objections**

The Dunn Group asserts that approval of the Settlement Agreement "without legislative review violates Article III of the State Constitution," which states in part:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belong to either of the others, except as in this constitution otherwise expressly directed or permitted.

Dunn Group Objections at 2, 5; N.M. Const. art. III § 1.

The Dunn Group argues that "Similar to other compacts, the proposed water adjudication Settlement Agreement creates and/or changes existing law."  Dunn Group Objections at 5-7.  In support of their argument, the Dunn Group relies on *Clark v. Johnson*, 120 N.M. 562 (1995), in which the New Mexico Supreme Court held that gaming compacts with various tribes and pueblos, which authorized gaming that state law did not allow, required legislative approval. The Dunn Group concludes that "only the New Mexico legislature has the authority to bind the State into compacts and agreements," and that the "New Mexico Executive branch officers [one of whom was Attorney General Gary K. King] who signed the proposed Settlement Agreement . . . lacked the authority to authorize it."  Dunn Group Objections at 7.  The Dunn Group's conclusion ignores New Mexico law:

> **The attorney general** and district attorneys of this state in their respective districts, when any civil proceedings may be pending in their respective districts, in the district court, in which the state or any county may be a party, whether the same be an ordinary suit, scire facias proceedings, proceedings growing out of any criminal prosecution, or otherwise, **shall have power to compromise or settle said suit or proceedings**, or grant a release or enter satisfaction in whole or

in part, of any claim or judgment in the name of the state or county, or dismiss the same, or take any other steps or proceedings therein which to him may appear proper and right; and all such civil suits and proceedings shall be entirely under the management and control of the said attorney general or district attorneys, **and all compromises, releases and satisfactions heretofore made or entered into by said officers are hereby confirmed and ratified.**

N.M. Stat. Ann. § 36-1-22 (1978) (**emphasis added**).

The Dunn Group also argues that "The State Engineer is required to adjudicate water rights based on specific criteria and existing law," that "the law in New Mexico is that beneficial water rights existing and used prior to 1907, have been confirmed," and that the "Settlement Agreement seeks to modify this legal standard and provide water rights to the Taos Pueblo that were not established by beneficial use prior to 1907." Dunn Group Objections at 7-9. The Dunn Group fails to take into account federal law. Taos Pueblo's water rights claims include federal reserved water rights based on *Winters v. United States*, 207 U.S. 564 (1908). *See* Doc. 1640 at 7. "*Winters* rights are federal rights," "are unaffected by state water laws," and "reserve water for new uses." 2 Water and Water Rights § 37.02(a)(1) (Amy K. Kelley, ed., 3d ed. 2014).

The Dunn Group argues that the "Settlement Agreement provides for the identification of State-funded 'Mutual-Benefits Projects' without legislative review," and that the "Executive branch's approval of Mutual-Benefits projects using State appropriated funds without legislative review or input interferes with the Legislative branch's functions and authorities." Dunn Group Objections at 9-11. The Dunn Group's argument regarding the use of State funds without legislative approval is without merit. Article 13.11 of the Settlement Agreement, "Contingent on Appropriation of Funds," states:

> The expenditure or advance of any money or the performance of any obligation by . . . the State of New Mexico under this Settlement Agreement is contingent upon appropriation of funds therefor . . . . In the event the New Mexico Legislature fails to appropriate funds the State of New Mexico shall not accrue liability under this Settlement Agreement.

Doc. 5553-2 at 100.

The Court will overrule the Dunn Group Objections that approval of the Settlement Agreement without legislative review violates Article III of the State Constitution.

**The Estate of Jose Manuel Santistevan's Objections**

The Estate's first objection is that "the Special Master has refused to reject . . . the decree of the District Court of Taos County entered in 1893." Estate Objections at 2. The Estate asserts that "Contrary to the position of the settlement parties, the 1893 decree does not govern [the Estate's] entitlement to water," and notes that the "decree is referred to in the settlement agreement at pp. 63, 66, and 67." *Id.* The Estate mischaracterizes the Settlement Agreement. The Settlement Agreement does not state that the Estate's entitlement to water is governed by the 1893 decree. It merely states that "the waters of the Rio Lucero shall be shared *consistent with* the 1893 Rio Lucero decree *as modified* by this Article 8." Doc. 5553-2 at 69 (*emphasis added*).

The Estate is located in Arroyo Seco Abajo which under the Settlement Agreement is entitled to the surplus flows of the Rio Lucero. *See* Doc. 5553-2 at 69. For its second objection, the Estate "ask[s] that the court define the circumstances under which the flows in the river are 'surplus' and therefore belong to [the Estate]" because the "Court and its water master cannot do so unless there is a specified method for determining when the limits appropriate to each acequia have been met." Estate Objections at 4. The Settlement Agreement contains a provision for determining when a surplus exists based on the amount of water allocated for irrigated acreage and livestock impoundments for the users outside of Arroyo Seco Abajo. *See* Doc. 5553-2 at 70. The Estate's objection appears to be related to its concern that the surplus determination will be made on an annual basis when the irrigation season has ended, which would "effectively depriv[e] the Estate of all water." Estate Objections at 4. The Estate does not identify, and the

9

Court has not found, any provisions in the Settlement Agreement that would limit the determination of water delivery to an annual basis.  The Estate, citing a regulation governing the State Engineer's active water resource management program, acknowledges that "frequent, as opposed to annual delivery determinations are commonplace" and that "a water master may determine delivery requirements other than on an annual basis."  Estate Objections at 4-5.

The Estate's final objection relates to a letter that is attached as an exhibit to the Settlement Agreement.  The letter, from the Office of the State Engineer, informs the El Prado Water and Sanitation District that the District over-diverted groundwater, which depletes surface water from the Rio Lucero and Arroyo Seco, and identifies four methods for repayment of the overdiversion.  *See* Doc. 5553-10.  The Estate contends that the State, which is a party to the Settlement Agreement, is bound by all of the provisions in the Settlement Agreement, and because the letter is included as an attachment to the Settlement Agreement, the State is bound by the statements of fact regarding the amount of overdiversion and the conclusions of law regarding the payback methods.  *See* Estate Objections at 7.  The Estate asserts that the inclusion of the letter into the Settlement Agreement "deprives the Estate of any ability to receive a fair and impartial administrative or regulatory hearing respecting the factual statements and conclusions of law contained in [the letter]."  *Id.*  The Court disagrees.  The letter is not a provision or clause of the Settlement Agreement.  It is simply referred to in Article 8.3.2 of the Settlement Agreement which provides "The Water Rights Owning Parties shall not protest any payback action or application for such action that is consistent with the terms of that letter."  Doc. 5553-2 at 46.  The Estate is not a party to the Settlement Agreement.  *See* Doc. 5553-2 at 7-8.  Furthermore, regarding the Estate's concern about receiving a fair and impartial administrative or regulatory hearing respecting the statements in the letter, any party dissatisfied

with any decision of the State Engineer may appeal to state district court.  *See*  N.M. Stat. Ann.

§ 72-7-1.A.

**Jerome F. Lucero's Objections**

Mr. Lucero states "the Special Master cites numerous cases of case law that defends her

reasoning for ruling the way she did, however it is my belief that this [settlement] agreement is

unique in nature because of the scope and largeness of the project therefore case law should not

apply."  Lucero Objection at 1.  The Court disagrees.  The cases cited by the Special Master

relate to the standard of review for settlement agreements and identify general issues, applicable

to most if not all settlement agreements, the Court should consider.  Mr. Lucero does not explain

why those general issues are not applicable to the Settlement Agreement in this case.

Mr. Lucero also states:

> the Special Master believes that the State Engineer will step in and insure that
> nothing causes harm to the general public but I submit that this is a naïve view
> because all one has to do is review what the State Engineer has done in the case of
> the Spring Ditch.  I submit that the State Engineer has done nothing to protect the
> Spring Ditch from the stealing of our water by the Town of Taos.  Therefore it is
> my belief that the State Engineer will do absolutely nothing to correct any
> situation that would do harm to others [sic] users.

Lucero Objection at 1.  Mr. Lucero does not support his speculative "belief that the State

Engineer will do absolutely nothing to correct any situation that would do harm to other users"

with any details regarding the alleged Spring Ditch issue or with any citation to State law or

regulations that would preclude the State Engineer from fulfilling his duties under the settlement

agreement.

Mr. Lucero asks "what did the Special Master mean when she said that the protesters that

were represented by attorney A. Blair Dunn would be treated differently."  Lucero Objection at

2.  The Special Master did not state that the protestors represented by Mr. Dunn would be

"treated differently."  She stated "The objections filed by the group represented by Mr. Dunn are not addressed in this Report and will be dealt with separately."  Special Master's Report at 8.  As discussed above, the Dunn Group's request for mandamus was addressed in a Memorandum Opinion and Order, Doc. 5929, by the District Judge, not the Special Master.  The remainder of the Dunn Group's objections are addressed earlier in this Memorandum Opinion and Order.

Mr. Lucero asks "why there was no meeting with the Judge in open public hearing format so direct questioning of the parties be conducted under oath in the presence of a judge??  In any other review of a situation that could have a negative affect [sic] on the public the ultimate authority conducts an open public hearing, why wasn't [this] done in this case??"  Lucero Objection at 2.  This Court follows the Federal Rules of Civil Procedure.  Those rules require the Court to decide *de novo* all objections to findings of fact and conclusions of law made or recommended by a Special Master.  *See* Fed. R. Civ. P. 53(f).  "The plain language of Rule 53 shows that the review of a Special Master's decision requires the court to make a *de novo determination*, not conduct a *de novo hearing*"  *Commissariat À L'Energie Atomique v. Samsung Electronics Co.*, 245 F.R.D. 177, 179 (D. Del. 2007) (*emphasis in original*).  The Court has reviewed the Special Master's Report and the objections to her Report.  Because the Court understands the Special Master's opinion and the Objector's arguments, the Court does not believe that a hearing is warranted.

Mr. Lucero also asks why three "protests" were ignored by the Special Master.  *See* Lucero Objection at 2.  Because of the potentially large number of objectors, the Special Master entered an Interim Procedural Order, Doc. 5694, which established certain requirements "to ensure that only those who were serious about maintaining their objections through the expedited *inter se*  process would be able to proceed, thus conserving resources of the Court and of all

other parties with regard to expenses for service of papers, potential discovery, etc." Special Master's Report at 7, n. 3. The three protestors did not comply with the participation requirements in the Interim Procedural Order. *See* Special Master's Report at 7-8; Initial Planning and Scheduling Order at 3, Doc. 5796. The three protestors did not file any objections to the Special Master's Interim Procedural Order, her Initial Planning and Scheduling Order or her Report.

**Glorianna D. Atencio's Objections**

Ms. Atencio objects to the Special Master's Report because "it appears that no valid consideration was given to point 5 [of her Statement of Objector's Issues, Doc. 5841] which states Taos Pueblo's position of entitlement to the water in the Rio Hondo is negated by in [sic] the <u>Spanish irrigation in Taos Valley</u> written by John O. Baxter." The Special Master did consider Ms. Atencio's point 5 stating that "Ms. Atencio fails to provide . . . any legal support for the implied assertion that Taos Pueblo's award of Rio Hondo water must be dependent on prior use." Special Master's Report at 11. Ms. Atencio's Objections to the Special Master's Report also fails to provide any legal support for the proposition that Taos Pueblo's rights to Rio Hondo water under the settlement agreement must be dependent on prior use. As discussed above regarding the Dunn Group Objections, Taos Pueblo's water rights claims are based in part on federal law which reserves water for future uses.

Ms. Atencio notes that some provisions in the Settlement Agreement allow for transfer of water rights and makes the conclusory allegation that such transfers "will hurt many who irrigate their lands." Atencio Objections at 2-3. She does not, however, explain how those transfers would "severely impact the farmers' irrigation rights." Consequently, Ms. Atencio has not

demonstrated specific harm or injury to her water rights that would occur as a result of the entry of the Partial Final Decree.

**Alfred Trujillo's Objections**

Some of Mr. Trujillo's Objections relate to the Court's procedure for determining whether to approve the Settlement Agreement.  Mr. Trujillo asserts that: (i) the "response process itself is unfair, inadequate and unreasonable given the amount and type of material that is expected to be reviewed and promptly processed;" (ii) "the Court should allow more openness in hearing and deciding objections;" (iii) the "impression made is that the Court must comply with whatever came out of Washington D.C. as per whatever presentation the Settling Parties made there," and that the "Court should not be bound by imposed guidelines and timelines that interfere with a fair adjudication of rights;"  and (iv) not all claimants were included in the settlement negotiations.  Trujillo Objections at 2-4.

Mr. Trujillo's objections regarding the Court's procedure for determining whether to approve the Settlement Agreement are not persuasive.  The Special Master entered an Order, Doc. 5796, establishing a June 26, 2014 deadline for filing responses.  The Special Master later granted motions for extensions of time to file responses to August 1, 2014, Doc. 5833, and again to September 1, 2014, Doc. 5839.  Mr. Trujillo did not file an objection to the June 26, 2014 deadline or request an extension of time to file a response.  Mr. Trujillo asserts that the Court should allow more openness in hearing objections, but does not provide any examples or instances where the Court has not been open to hearing objections or has not proceeded according to the Federal Rules of Civil Procedure.  Mr. Trujillo's impression that the Court is bound by guidelines and timelines presented by the Settling Parties is mistaken.  While it does consider guidelines and timelines proposed by parties to this case, the Court also considers the

objections of parties opposing the proposed guidelines and timelines.  The Court, relying on the

Federal Rules of Civil Procedure and applicable law, makes the final determination on these

matters and is not bound by the proposals of the Settlement Parties.  Mr. Trujillo's comment, that

"not all claimants were included in the settlement negotiations," while true, is not relevant to the

Court's determination of whether to approve the Settlement Agreement:

> In litigation involving numerous parties, litigants sometimes seek a settlement
> with less than all of the parties. FEDERAL JUDICIAL CENTER, MANUAL
> FOR COMPLEX LITIGATION 174 (4th ed.2004). In this adjudication, where
> there are hundreds of claimants, it is extremely unlikely that settlement
> negotiations involving every party in this case would resolve successfully in a
> reasonable period of time. There is nothing impermissible or improper about the
> Settlement Parties attempting to settle their disputes among themselves and
> allowing other parties to join in the settlement later.

*New Mexico ex rel. State Engineer v. Aamodt*, 582 F.Supp.2d 1313, 1319 (D.N.M. 2007)

(Vázquez, J.).

Mr. Trujillo's other objections suggest that the Court's review of the Settlement

Agreement is premature due to insufficient or incorrect information.  Mr. Trujillo asserts that: (i)

he "has raised a wide range of issues and questions that merit fair, adequate and reasonable

attention and further consideration;" (ii) that land grants in the area were "misconfirmed;"  (iii)

he "awaits factual issues concerning the Pueblo's claims;" (iv) because many water rights claims

are "misrepresented," there needs to be an "accurate historical analysis;" (v) he "firmly believes

the local and state Settling Parties know that the issues relating to claims north of the Pueblo are

not genuine.  They are products of misconfirmed land grants during the U.S. Territorial Period;"

(vi) "by denying history the Report denies heritage;" and (vii) there are several statements

regarding non-Pueblo water rights and history that "are true until proven otherwise."   Trujillo

Objections at 1-2, 5-9.

These objections are vague and conclusory.  Mr. Trujillo does not support these objections with citations to the record or to specific sections of the Settlement Agreement to show that the Settlement Agreement is not fair or reasonable, or that he will be harmed by approval of the Settlement Agreement.  The Court will not comb the record or make a party's arguments for it.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

**IT IS ORDERED** that the Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5927, is **ADOPTED.**

**IT IS ALSO ORDERED** that the Joint Motion to Adopt Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5930, is **GRANTED.**

**IT IS FURTHER ORDERED** that the Dunn Group Objections, Doc. 5842, the Objections to the Special Master's Report and Recommendations by the Estate of Jose Manuel Santistevan, Doc. 5931, Jerome F. Lucero's Continued Concerns on the Special Master Recommendations to the Court from a *Pro Se* Objector, Doc. 5934, Glorianna D. Atencio's Objections to Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5935, and Alfred Trujillo's Objection to Special Master's Report and Recommendations Regarding Objections to Partial Final Judgment and Decree on the Water Rights of Taos Pueblo, Doc. 5936, are **OVERRULED.**

**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**